No. 22-13261

# In the United States Court of Appeals for the Eleventh Circuit

KEITH EDWARDS, AS GUARDIAN AND CONSERVATOR FOR JERRY BLASINGAME,

*Plaintiff-Appellee,*

v.

OFFICER J. GRUBBS, #6416, ET AL.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-cv-02047 (Jones, J.)

## BRIEF OF APPELLANT OFFICER J. GRUBBS

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
TROUTMAN PEPPER
HAMILTON SANDERS, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Appellant Officer J. Grubbs*

# CERTIFICATE OF INTERESTED PERSONS

## No. 22-13261, *Keith Edwards v. Officer J. Grubbs, et al.*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1.      Atlanta Police Department

2.      Blasingame, Jerry

3.      City of Atlanta

4.      Dearing Jr., James E.

5.      Eason, Kimberly D.

6.      Edwards, Keith

7.      Grubbs, Officer J.

8.      Hatchett, Ayanna D.

9.      Johnson, Vernon R.

10.     Jones, Hon. Steve C.

11.     Melton, Harold D.

12.     Peeler, Charles E.

13.     Tobin, Darren M.

14.     Waldbeser, Elizabeth P.

July 26, 2023                          s/ *Harold D. Melton*
                                      Harold D. Melton

                                      *Counsel for Appellant Officer J. Grubbs*

## STATEMENT REGARDING ORAL ARGUMENT

Officer Grubbs respectfully requests that the Court grant oral argument. The legal issues in this appeal are nuanced and include alleged constitutional violations and Officer Grubbs' assertion of qualified immunity. Further, the Court has carried a jurisdictional question with the case. Oral argument will assist the Court in clarifying the legal and procedural issues raised in this appeal.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ...................................................... iii

Table of Contents ............................................................................ iv

Table of Authorities ......................................................................... v

Introduction .................................................................................. 1

Jurisdictional Statement .................................................................... 2

Statement of Issues.......................................................................... 3

Statement of the Case........................................................................ 3

I.  Factual Background ..................................................................... 3

II. Relevant Proceedings Below ........................................................... 6

A. Trial and Jury Verdict.................................................................. 6

B. Post-trial motions and proceedings.................................................... 7

III.Standard of Review...................................................................... 9

A. Motion for judgment as a matter of law ............................................... 9

B. Rule 60(b) motion ...................................................................... 9

Summary of Argument ...................................................................... 10

Argument..................................................................................... 14

I.  Officer Grubbs was entitled to qualified immunity.................................... 14

A. Officer Grubbs did not violate Mr. Blasingame's constitutional rights. ........... 16

B. Officer Grubbs did not violate clearly established federal law. ...................... 20

II. If Officer Grubbs is not entitled to qualified immunity, this Court should vacate the district court's denial of Officer Grubbs' Rule 60(b) motion. ......... 31

Conclusion ................................................................................... 35

Certificate of Compliance ................................................................... 36

Certificate of Service ........................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
    46 F.4th 1317 (11th Cir. 2022) ......................................................... 10

*Arthur v. Thomas*,
    739 F.3d 611 (11th Cir. 2014) ............................................................. 9

*Baxter v. Roberts*,
    54 F.4th 1241 (11th Cir. 2022) .................................................... 21, 26

*Bradley v. Benton*,
    10 F.4th 1232 (11th Cir. 2021) .................................................. *passim*

*Cantu v. City of Dothan, Ala.*,
    974 F.3d 1217 (11th Cir. 2020) ......................................................... 28

*Coffin v. Brandau*,
    642 F.3d 999 (11th Cir. 2011) .......................................................... 21

*Cook v. Riley*,
    No. 11-cv-24, 2012 WL 2239743 (M.D.N.C. June 15, 2012) .............. 30

*Draper v. Reynolds*,
    369 F.3d 1270 (11th Cir. 2004) ......................................................... 24

*Fils v. City of Aventura*,
    647 F.3d 1272 (11th Cir. 2011) ....................................... 17, 18, 22, 23

*Finch v. City of Vernon*,
    845 F.2d 256 (11th Cir. 1988) ...................................................... 33, 34

*Graham v. Connor*,
    490 U.S. 386 (1989) .................................................................... 16, 18

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .......................................................................... 14

*Hinson v. Bias,*
    927 F.3d 1103 (11th Cir. 2019) ......................................................... 15

*Lucas v. Fla. Power & Light Co.,*
    729 F.2d 1300 (11th Cir. 1984) ......................................................... 33

*Mahone v. Ray,*
    326 F.3d 1176, 1180 (11th Cir. 2003) ................................... 32, 33, 34

*Manners v. Cannella,*
    891 F.3d 959 (11th Cir. 2018) ....................................................22, 25

*MidlevelU, Inc. v. ACI Info. Grp.,*
    989 F.3d 1205 (11th Cir.), *cert. denied,* 141 S. Ct. 2863
    (2021) ...................................................................................................... 9

*Montgomery v. Noga,*
    168 F.3d 1282 (11th Cir. 1999) ........................................................... 9

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ................................................................................ 21

*Negron v. City of New York,*
    976 F. Supp. 2d 360 (E.D.N.Y. 2013) ............................................... 30

*Oliver v. Fiorino,*
    586 F.3d 898 (11th Cir. 2009) ............................................... 17, 22, 23

*Peabody v. Perry Twp.,*
    No. 10-cv-1078, 2013 WL 1327026 (S.D. Oh. Mar. 29,
    2013) .................................................................................................... 30

*Peroza-Benitez v. Smith,*
    994 F.3d 157 (3d Cir. 2021) ............................................................... 30

*Pruitt v. City of Montgomery, Ala.,*
    771 F.2d 1475 (11th Cir. 1985) ......................................................... 29

*Rockwell v. Rawlins,*
    No. 13-cv-3049, 2014 WL 5426716 (D. Md. Oct. 23, 2014) ............... 30

*Saucier v. Katz*,
535 U.S. 194 (2001)............................................................ 21

*Smith v. LePage*,
834 F.3d 1285 (11th Cir. 2016)........................................ 17, 18, 24, 25

*Spencer v. Benison*,
5 F.4th 1222 (11th Cir. 2021) ............................................ 15

*Stone v. I.N.S.*,
514 U.S. 386 (1995)............................................................ 32

*Tennessee v. Garner*,
471 U.S. 1 (1985)........................................................... 12, 27, 28

*Thosteson v. United States*,
331 F.3d 1294 (11th Cir. 2003) ........................................... 9

*United States v. Guilbert*,
692 F.2d 1340 (11th Cir. 1982) .......................................... 29

*Vinyard v. Wilson*,
311 F.3d 1340 (11th Cir. 2002) .......................................... 15

*Wade v. United States*,
13 F.4th 1217 (11th Cir. 2021), *cert. denied sub nom.*
*Wade v. Lewis*, 142 S. Ct. 1419 (2022).......................... 21, 27

*Waldron v. Spicher*,
954 F.3d 1297 (11th Cir. 2020) .......................................... 21

*Wate v. Kubler*,
839 F.3d 1012 (11th Cir. 2016) ...................................... 17, 23

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015)....................... 16, 18, 19, 20

# INTRODUCTION

In this case, Officer Grubbs, a police officer carrying out his routine duties, attempted to arrest Mr. Blasingame, who was panhandling by the side of the interstate. As Mr. Blasingame fled from Officer Grubbs, Officer Grubbs deployed his taser one time to stop Mr. Blasingame's flight. In a tragic and unforeseeable turn of events, Mr. Blasingame, who was running up a hill to escape from Officer Grubbs, rolled down the hill and into a metal utility box hidden from view at the base of the hill. Mr. Blasingame was left paralyzed.

After a full trial on whether Officer Grubbs used excessive force, the district court denied Officer Grubbs' motion for judgment as a matter of law and held that he was not entitled to qualified immunity. The district court allowed its analysis to be swayed by the consequences of Officer Grubbs' actions and allowed 20/20 hindsight to color its holding. In doing so, it committed several legal errors. It did not analyze the situation from the perspective of a reasonable officer in Officer Grubbs' shoes, and it misread and misapplied the clearly established law of this Court. In short, the district court should be reversed, as Officer Grubbs is entitled to qualified immunity.

## JURISDICTIONAL STATEMENT

The amended complaint, *see* Doc. 52, was filed pursuant to 42 U.S.C. § 1983, and the United States District Court for the Northern District of Georgia accordingly had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because Officer Grubbs appeals from the district court's order granting judgment as a matter of law, entered September 14, 2022, which formally resolved all claims and entered judgment in favor of Mr. Blasingame and against Officer Grubbs in the amount of $40,000,000.[1] Doc. 177 at 36–37.

Officer Grubbs timely filed his Notice of Appeal from the district court's order granting judgment as a matter of law on September 22, 2022, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A). Doc. 178. After this Court stayed briefing while the trial court resolved pending post-verdict motions, *see* Memo. to Counsel or Parties, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Dec. 1, 2022), the district court ruled

---

[1] This Court requested briefing on whether the district court's order granting judgment as a matter of law, Doc. 177, is a final order under 28 U.S.C. § 1291, and carried the question with the case. For the reasons articulated in his response to the Court's jurisdictional question, Officer Grubbs asserts that the district court's order is a final judgment. *See* Appellant's Resp. to Jurisdictional Question, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Oct. 25, 2022)

on the pending motions. Doc. 207. Officer Grubbs then filed an amended notice of appeal in accordance with Rules 3 and 4 of the Federal Rules of Appellate Procedure. Doc. 223.

## STATEMENT OF ISSUES

1. Whether Officer Grubbs is entitled to qualified immunity; and

2. Whether the district court properly denied Officer Grubbs' Rule 60(b)(6) motion.

## STATEMENT OF THE CASE

### I.    Factual Background

On the afternoon of July 10, 2018, Officer Grubbs and his partner, Officer Shelley, were driving in their patrol car near an on-ramp to Interstate 20 in Atlanta. Tr. 854:10–25. The officers noticed Mr. Blasingame, who appeared to be panhandling, standing on the shoulder of the highway on-ramp. Tr. 1086:20–25. Officer Grubbs decided to question Mr. Blasingame, and Officer Shelley stopped the patrol car across the street from Mr. Blasingame. Tr. 885:16–19; 1087:4–9.

Officer Grubbs got out of the car and crossed the busy roadway, approaching Mr. Blasingame to ascertain why he was standing on the highway ramp. Tr. 1087:4–9; 1048:21–25. When he saw Officer Grubbs, Mr. Blasingame turned and ran away on the shoulder of the highway

ramp; Officer Grubbs followed him on foot. Tr. 1087:10–18. Officer Grubbs called after Mr. Blasingame to stop, but Mr. Blasingame continued to run away. Tr. 1051:11–18.

As Officer Grubbs got closer to Mr. Blasingame, Mr. Blasingame crossed over a roadside guardrail, so he was then on the side farthest away from where Officer Grubbs first saw him. Tr. 1054:3–11; Tr. 1051:23–1052:8. The area where Mr. Blasingame crossed over was extremely overgrown with shrubs and other vegetation and opened up to a downhill decline. Tr. 1056:3-6, 1075:10-13. At the bottom of the decline, out of Officer Grubbs' sight line, was a grassy area with a metal utility box that sat on a concrete pad. Tr. 538:23–539:5. On the other side of the grassy area and the utility box was another road near the interstate. Officer Grubbs could not see the utility box, but he was aware that the decline led downwards towards another road. Tr. 1089:4–12, 1090:16–1091:1.

While Mr. Blasingame was crossing over the guardrail, Officer Grubbs caught up with him and attempted to stop Mr. Blasingame. Tr. 1054:18–22. In response, Mr. Blasingame moved his arm backwards at Officer Grubbs in what Officer Grubbs later described as a "clearance

strike." Tr. 1056:1–23. Mr. Blasingame did not make contact with Officer Grubbs or cause him to feel in physical danger, nor did he verbally respond to Officer Grubbs' instruction to stop. Tr. 1058:5–8; 1059:2–6.

Mr. Blasingame ran towards an opening in the brush. Tr. 1064:10–15. Officer Grubbs, concerned that Mr. Blasingame would flee into traffic on the road beyond the grassy area and potentially endanger himself and drivers, drew and discharged his taser at Mr. Blasingame. Tr. 1068:10–1069:1. Officer Grubbs did not verbally warn Mr. Blasingame about the taser. Tr. 1066:6–10. The taser struck Mr. Blasingame, causing him to fall down the decline and hit his head on the concrete base of the utility box in the grassy area. Tr. 538:23–539:5 (citing Ex. 39); 1075:14–1076:15. The fall caused Mr. Blasingame several fractured bones and significant bleeding. Tr. 1274:7–1275:4. This entire incident took place in 45 seconds or less. Tr. 1090:3–6.

After Mr. Blasingame fell, Officer Grubbs approached as Mr. Blasingame lay on the ground, breathing but unresponsive. Tr. 1076:25–1077:7; 1091:19–23. Over the next several minutes, Officer Grubbs used his radio to summon first responders to provide medical assistance, walked back to the roadway to inform Officer Shelley of what had

occurred, went back to attend to Mr. Blasingame, and called a supervising officer by phone to report the incident. Tr. 1078:16–1081:12, 1091:17–1093:8. Shortly after, Mr. Blasingame was transported to a hospital where he was treated for his injuries. Tr. 1079:13–23.

## II.  Relevant Proceedings Below

One year later, Mr. Blasingame sued Officer Grubbs and the City of Atlanta, bringing a claim under 42 U.S.C. § 1983 for an alleged violation of his Fourth Amendment rights. Doc. 1 at 5. After some initial discovery, Plaintiff[2] filed an Amended Complaint on Mr. Blasingame's behalf, bringing the same Section 1983 claim against Officer Grubbs. Doc. 52. ¶¶ 29–47.

### A.  Trial and Jury Verdict

The jury found for Plaintiff and returned a $40 million verdict—$20 million in compensatory damages and $20 million in punitive damages— against Officer Grubbs. Doc. 163 at 1–2.

---

[2] Mr. Blasingame was originally the named plaintiff in this action. After he filed the Amended Complaint, a state court in a related action found that he lacked sufficient capacity to make or communicate significant decisions about his own health and safety. *See generally* Doc. 113. Consequently, Keith Edwards was appointed as Mr. Blasingame's guardian and conservator, and the parties stipulated to Mr. Edwards' replacement of Mr. Blasingame as the named plaintiff. *Id.* For clarity, this brief will refer to Mr. Blasingame by name and Mr. Edwards as "Plaintiff."

### B.   Post-trial motions and proceedings

After the trial, Officer Grubbs moved for judgment as a matter of law. Doc. 176. The district court denied Officer Grubbs' motion. Doc. 177. As relevant here, the district court held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame and thereby violated his Fourth Amendment rights. *Id*. at 30–32. The district court also held that Officer Grubbs' use of the taser was clearly established as a constitutional violation at the time it occurred, relying exclusively on this Court's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021). *Id*. at 32–34. Officer Grubbs timely appealed from the district court's order. Doc. 178.

After Officer Grubbs filed his notice of appeal, this Court issued a jurisdictional question, and the parties submitted briefing in response. After that briefing was submitted, Plaintiff filed two Rule 60(b) motions for relief from the district court's order absolving the City from liability. Docs.187, 191. Consequently, this Court rescinded the briefing schedule on appeal until the district court resolved those pending motions. Memo. to Counsel or Parties, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Dec. 1, 2022).

Officer Grubbs filed his own Rule 60(b) motion on December 23, 2022, *see* Doc. 207. In that motion, he argued that the punitive damages awarded against him were excessive as a matter of law because the compensatory award was high enough that the amount of punitive damages awarded far exceeded the amount necessary to punish and deter, the amount showed that passion or prejudice had invaded the trial, and comparable defendants had received far smaller punitive damages verdicts. Doc. 207-1 at 5–13. Officer Grubbs also argued that the punitive damages award violated his Fourteenth Amendment right to due process and should be reduced for that reason. *Id*. at 14–17.

The district court denied all three pending Rule 60(b) motions. As relevant here, it denied Officer Grubbs' motion without analyzing the merits, concluding that it lacked jurisdiction to consider the motion because Officer Grubbs had already appealed the order granting judgment against him as a matter of law, which implicated the punitive damages award. Doc. 219 at 15–16. Alternatively, the district court also denied Officer Grubbs' motion because it believed it should have been construed as a Rule 59(e) motion to alter or amend the judgment and should have been filed within 28 days of the judgment. *Id*. at 16–18.

8

## III. Standard of Review

### A. Motion for judgment as a matter of law

This Court reviews "*de novo* a grant or denial of a judgment as a matter of law." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir.), *cert. denied*, 141 S. Ct. 2863 (2021) (citing *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003)). "In considering the sufficiency of the evidence that supports the jury's verdict," the Court reviews "the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (quotation omitted). However, the nonmoving party "must put forth more than a mere scintilla of evidence suggesting that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Thosteson*, 331 F.3d at 1298 (internal quotation marks omitted). Any legal determinations raised by the motion are reviewed *de novo. Montgomery*, 168 F.3d at 1289.

### B. Rule 60(b) motion

This Court reviews "a district court's denial of a Rule 60(b) motion for an abuse of discretion." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (quotation omitted). A "district court by definition abuses its

discretion when it makes an error of law." *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1324 (11th Cir. 2022) (quotation omitted).

## SUMMARY OF ARGUMENT

Officer Grubbs was entitled to qualified immunity because he did not violate Mr. Blasingame's Fourth Amendment rights and because his conduct was not a clearly established Fourth Amendment violation at the time of the incident.

Officer Grubbs did not violate Mr. Blasingame's Fourth Amendment rights because he did not use excessive force when attempting to seize Mr. Blasingame. Officer Grubbs made a "split-second judgment" about the necessary amount of force that should not be judged with the 20/20 vision of hindsight. Mr. Blasingame was breaking the law and he disobeyed instructions by fleeing from an officer who was attempting to apprehend him, and not complying with Officer Grubbs' instructions to stop. Further, it was undisputed at trial that, from where he stood, Officer Grubbs could not see the power box or the bottom of the hill, but he knew that the hill sloped downwards towards another road. As a result, the power box and concrete pad—the situational hazard that

injured Mr. Blasingame—was not apparent to a reasonable officer at the scene.

Even assuming Mr. Blasingame's constitutional rights were violated, Officer Grubbs is still entitled to qualified immunity because the law was not clearly established at the time of the tasing. In July 2018, the law in this Circuit was that tasing an arrestee beyond his complete physical capitulation repeatedly in a short time period where an arrestee was mostly cooperative and made no attempt to flee was excessive force. It was also clearly established that when an arrestee appears hostile, using a taser to subdue the arrestee is generally preferable to a physical struggle. Those two scenarios are different enough from the facts of this case that Officer Grubbs could not have been on notice that his conduct violated the Fourth Amendment. On the one hand, Mr. Blasingame did not comply with Officer Grubbs' instructions, was suspected of a crime, and fled. And Officer Grubbs only tased Mr. Blasingame one time. On the other hand, Mr. Blasingame was not suspected of a violent crime and was not threatening or aggressive towards Officer Grubbs.

The district court incorrectly held that Officer Grubbs' use of the taser was a clearly established constitutional violation at the time it

11

occurred. In doing so, it relied on this Court's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), which post-dated the conduct at issue by three years. The district court relied on two aspects of *Bradley*: its analysis of previous caselaw and its holding in situations where an officer deploys a taser against an arrestee who is standing on an elevated surface. But the *Bradley* court relied only on the United States Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985), and held that under *Garner*, it was clearly established that an officer could not use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot.

The *Bradley* court's *Garner* analysis is not applicable because the facts of *Garner* are too different from the facts in this case to have put Officer Grubbs on notice. *Garner* involved the use of deadly force, but it was not apparent to a reasonable officer at the scene that the use of a single taser shock on Mr. Blasingame was an application of excessive and potentially deadly force. A reasonable officer deploying a taser once against a fleeing suspect on a grassy hill with some underbrush and no visible dangers or obstacles would not have known he was applying force that had a substantial risk of causing death or serious bodily harm.

12

The district court's reliance on *Bradley*'s elevated height analysis was also erroneous. Mr. Blasingame was not at an "elevated height" in the way that the suspect was in *Bradley*. Standing or running with both feet on the ground of a grassy hill, with no open hazards is inherently different from the elevated height in *Bradley*, which was an eight-foot high concrete wall. An eight-foot fence or wall, or any kind of ledge is apparently treacherous and any application of force that caused a fall would be deadly force to a reasonable officer.

If Officer Grubbs is not entitled to qualified immunity, the Court should vacate the district court's denial of Officer Grubbs' Rule 60(b) motion and remand for consideration of the motion's merits. The district court wrongly held that it lacked jurisdiction to consider the motion for two reasons: first, because Officer Grubbs had already appealed the order granting judgment against him as a matter of law, which implicated the punitive damages award, and second, because the motion should have been construed as a Rule 59(e) motion, which was time-barred.

Both reasons for denial were erroneous. First, the pending notice of appeal did not deprive the district court of jurisdiction because district courts retain jurisdiction after the filing of a notice of appeal to consider

13

a Rule 60(b) motion and assess its merits. They can either deny the Rule 60(b) motion, or, if they believe it is meritorious, they can allow the movant to petition the appellate court for a remand so the district court can grant the motion.

Second, the district court should not have construed Officer Grubbs' motion as a time-barred Rule 59(e) motion when Officer Grubbs' motion was a Rule 60(b) motion both in substance and in timing. As for substance, Officer Grubbs did not seek reconsideration of any substantive issue going to the heart of the judgment, but instead raised an issue collateral to the merits of the case—the constitutionality of the amount of his punitive damages. As for timing, Officer Grubbs filed his motion more than 10 days after the district court's dispositive judgment. Accordingly, the district court should have ruled on the merits of Officer Grubbs' motion.

## ARGUMENT

### I. Officer Grubbs was entitled to qualified immunity.

Qualified immunity protects government officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). An officer is entitled to qualified immunity for an alleged Fourth Amendment violation "if his actions were objectively reasonable," or "if an objectively reasonable officer in the same situation could have believed that the force used was not excessive." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–41 (1987)). To obtain qualified immunity, an officer must show he was acting within the scope of his "discretionary authority" when the allegedly wrongful acts occurred. *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). Then, the burden shifts to the plaintiff to show that the officer's conduct violated federal law that was clearly established at the time. *Id.*

Here, Officer Grubbs was acting within his discretionary authority. *See Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (Officers were acting in their discretionary authority when they acted "while on duty as police officers conducting arrest and investigative functions."). Thus, the burden shifted to Plaintiff to establish a violation of a clearly established constitutional right, which he did not do. The district court improperly held that a reasonable jury could have found that Officer Grubbs

committed a constitutional violation that was clearly established at the time it occurred.

### A.   Officer Grubbs did not violate Mr. Blasingame's constitutional rights.

Officer Grubbs did not violate Mr. Blasingame's Fourth Amendment rights because he did not use excessive force when attempting to seize Mr. Blasingame. To determine whether an officer used reasonable force to seize a person, courts consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, (1989). This is an objective inquiry "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015) (quotation omitted). Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

This Court has laid out several guidelines for whether an arresting officer's use of a taser is reasonable. When a suspect "appears hostile, belligerent, and uncooperative, use of a taser might be preferable to a physical struggle causing serious harm to the suspect or the officer." *Fils v. City of Aventura*, 647 F.3d 1272, 1290 (11th Cir. 2011) (quotation omitted). But unprovoked taser use against a "non-hostile and non-violent suspect who has not disobeyed instructions" violates the Fourth Amendment. *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016) (citation omitted); *see also Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016) (continued use of taser on arrestee after he was subdued and compliant violated Fourth Amendment).

It also violates the Fourth Amendment to tase a suspect in a way that causes him to harmfully encounter a situational hazard that was obvious to a reasonable officer at the scene. For example, in *Bradley v. Benton*, tasing a suspect while he "was in a precarious position atop an eight-foot wall" was excessive force. 10 F.4th at 1240. And in *Oliver v. Fiorino*, 586 F.3d 898, 906 (11th Cir. 2009), officers continued to tase a suspect after subduing him, preventing him from sitting up and causing him to lay immobilized on "burning hot pavement," causing him to

scream with pain. The key inquiry in a situational hazard case is that the officer knew of or was aware of the hazard and disregarded it.

Under these principles, Officer Grubbs' use of force was reasonable. The entire incident took place in less than a minute. Tr. 1090:3–6. Officer Grubbs made a "split-second judgment" about the necessary amount of force, *Graham*, 490 U.S. at 396–97, that should not be judged "with the 20/20 vision of hindsight." *Weiland*, 792 F.3d at 1326. Mr. Blasingame was breaking the law and he "disobeyed instructions," *Smith*, 834 F.3d at 1294—he ran from an officer who was attempting to apprehend him, and he did not comply with Officer Grubbs' instructions to stop. Tr. 1051:11–18; 1087:10–18. Further, it was undisputed at trial that, from where he stood, Officer Grubbs could not see the power box or the bottom of the hill, but he knew that the hill sloped downwards towards another road. *Id.* 538:23–539:5; 1089:4–12; 1090:16–1091:1. As a result, the power box and concrete pad—the situational hazard that injured Mr. Blasingame—was not apparent to a reasonable officer at the scene, and tasing Mr. Blasingame, who "appear[ed] . . . uncooperative" and actively fled arrest was not an unreasonable decision. *Fils*, 647 F.3d at 1290.

18

The district court's analysis was cursory and thoroughly tainted by "the 20/20 vision of hindsight." *Weiland*, 792 F.3d at 1326. It applied only the broad *Graham* factors—and failed to consider any of this Court's subsequent caselaw applying those factors to taser incidents—and explained that while Mr. Blasingame was involved in unlawful conduct, panhandling is not a serious crime that endangers anyone, that Mr. Blasingame did not pose an immediate threat to anyone's safety, and that Officer Grubbs had testified that he did not feel in danger during the encounter. Doc. 177 at 30–31. The district court stated that "it would be reasonable for a jury to determine that there was not a great need for the application of force and that the use of a taser was disproportionate to whatever need for force existed." *Id*. at 31. Finally, it concluded that "the significant extent of the injury inflicted by the use of the taser counsels in favor of finding a use of excessive force." *Id*. at 31–32.

But, while the underlying crime might not have been relatively serious, that fact did not authorize Mr. Blasingame to flee lawful detention or require Office Grubbs to desist from pursuit. Additionally, focusing on the consequences of Officer Grubbs' decision instead of whether Officer Grubbs' actions were reasonable to an objective officer at

the scene was erroneous. The Court's fixation on the unforeseen results of Officer Grubbs' use of force is the very definition of using "20/20 hindsight" to color the analysis instead of applying "the perspective of a reasonable officer on the scene." *Weiland*, 792 F.3d at 1326." For instance, the district court stated in its analysis that "there was no non-speculative evidence showing that [Mr. Blasingame] intended to run directly onto, rather than along, the road next to the bottom of the hill." Doc. 177 at 31. But, Officer Grubbs testified that he knew the hill sloped down towards another road, Tr. 538:23–539:5, and a reasonable officer could have assumed that Mr. Blasingame might run onto the road.

In sum, setting aside the consequences of Officer Grubbs' action, which were not foreseen and obvious to a reasonable officer on the scene, he did not apply excessive force that violated Mr. Blasingame's Fourth Amendment rights.

## B. Officer Grubbs did not violate clearly established federal law.

Even assuming Mr. Blasingame's constitutional rights were violated, Officer Grubbs is still entitled to qualified immunity because the law was not clearly established at the time of the tasing. "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 535 U.S. 194, 202 (2001). A right must be clearly established "at the time of the challenged conduct," *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021), *cert. denied sub nom. Wade v. Lewis*, 142 S. Ct. 1419 (2022).

The existence of materially similar caselaw is "especially important in the Fourth Amendment context." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). While some general statements of law can be sufficiently clear, when the applicable legal standard is general, it "must be established with obvious clarity by the caselaw" so every objectively reasonable officer facing Officer Grubbs' circumstances would know that his conduct violated federal law when he acted. *Waldron v. Spicher*, 954 F.3d 1297, 1305 (11th Cir. 2020) (quotation omitted). Put simply, "prior case A" must inform an officer that "what he was doing in instant case B was against the law." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022). Only cases from the United States Supreme Court, this Court, or the Supreme Court of Georgia can clearly establish the law. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

At the time Officer Grubbs acted, in July 2018, the law in this Circuit was that tasing an arrestee "beyond [the arrestee's] complete physical capitulation" repeatedly in a short time period "where an arrestee was mostly cooperative and made no attempt to flee" was excessive. *Manners v. Cannella*, 891 F.3d 959, 974 (11th Cir. 2018) (quotation omitted). It was also clearly established that when an arrestee appears hostile, using a taser to subdue the arrestee is generally "preferable" to a physical struggle. *Fils*, 647 F.3d 1272. Consistent with those general statements, this Court's published cases from July 2018 and earlier involving tasers used on arrestees all find constitutional violations where an officer tased an already-subdued and unresistant suspect repeatedly. Conversely, there is no constitutional violation where a suspect was hostile, belligerent, or threatening to officers.

In the first category are cases like *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009). There, officers on patrol encountered a man standing in a road median, waving for help. *Id*. at 901. He was behaving erratically and failed to follow some of the officers' instructions, but "never acted in a threatening or belligerent manner toward the officers, nor did he even curse at them" and "did not try to grab [the officer next to him] or to swing

22

at him." *Id.* at 902. Without warning, one of the officers tased the man in prong mode, causing him to lose control of his body and fall onto the "scorching hot asphalt." *Id.* at 902–03. After being tased the first time, he did not strike back or threaten the officers. *Id.* at 903. Still, one officer tased him seven more times, and the electrical shocks and hot pavement together raised his body temperature until he had a seizure and died as a result. *Id.* at 903–04. The Court held that this was a clearly established Fourth Amendment violation. *Id.* at 905–07.

Similarly, in *Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016), an officer repeatedly tased a handcuffed arrestee who had been behaving erratically on a public beach. *Id.* at 1015. The arrestee resisted the officer but was subdued after one taser shock. *Id.* at 1017. However, the officer continued tasing the arrestee—in total five times in two minutes. *Id.* The tasing led to the arrestee's death. *Id.* And in *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), an officer violated an arrestee's Fourth Amendment rights when he tased him repeatedly outside of a club, even though the arrestee was not physically threatening and did not resist. *Id.* at 1289.

The other category of cases clearly establish that an officer does not violate the Fourth Amendment when he tases a noncompliant, hostile, belligerent, or threatening arrestee. In *Draper v. Reynolds*, 369 F.3d 1270, 1278–79 (11th Cir. 2004), an officer did not violate an arrestee's Fourth Amendment rights by tasing him during a traffic stop after the arrestee "used profanity, moved around and paced in agitation, and repeatedly yelled" at the officer. *Id.* at 1278. The arrestee also "refused to comply with" the officer's verbal instructions. *Id.* The Court held that using a taser on the arrestee—even without a verbal warning beforehand—was reasonable because it "may well have prevented a physical struggle and serious harm" to either the officer or the arrestee. *Id.*

Similarly, in *Smith v. LePage*, 834 F.3d 1285 (2016), an officer did not violate an arrestee's Fourth Amendment rights when he tased him once after the arrestee, who was holding a knife, refused to drop the knife as instructed and moved towards the officers on the scene. *Id.* at 1294–95. The arrestee continued to resist, fled inside his house, and barricaded himself in a bathroom. *Id.* at 1295. The officers tased him a second time when, as he was leaving the bathroom, the arrestee moved towards an

exit instead of surrendering. *Id*. Although the Court assumed based on the procedural posture that he was no longer armed, the situation was tense and the officers' use of the taser was reasonable. *Id*. And in *Manners*, 891 F.3d at 974, officers did not violate the Fourth Amendment when they tased an arrestee during a traffic stop after the arrestee refused to get back into his car on command, and physically struggled with the officer when he tried to effect the arrest. *Id*. at 965. A backup officer arrived on the scene and she tased the arrestee once in the stomach while he struggled with the other officer. *Id*. at 966. The Court concluded that a reasonable officer arriving on the scene could have concluded that the arrestee posed a threat to the other officer, and the tasing was therefore reasonable. *Id*. at 974.

Those two categories of cases are all different enough from the facts of this case that Officer Grubbs could not have been on notice that his conduct violated the Fourth Amendment. On the one hand, Mr. Blasingame did not comply with Officer Grubbs' instructions, was suspected of a crime, and fled. And Officer Grubbs only tased Mr. Blasingame one time. On the other hand, Mr. Blasingame was not suspected of a violent crime and was not threatening or aggressive

towards Officer Grubbs. There was no "prior case A" to inform Officer Grubbs that "what he was doing in instant case B was against the law." *Baxter*, 54 F.4th at 1263.

The district court incorrectly held that Officer Grubbs' use of the taser was a clearly established constitutional violation at the time it occurred. Doc. 177 at 33. The district court relied exclusively on this Court's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), which it described as holding that an officer violates a suspect's clearly established Fourth Amendment rights "by tasing the suspect when he was on an elevated and precarious surface." *Id*. at 33. The district court then explained that "Officer Grubbs tased a fleeing but non-threatening suspect who had not committed a serious crime when that suspect was on an elevated, precarious surface, which made it highly likely that the tasing would result in serious injury or death." *Id*. at 33–34. It further speculated that "[e]ven had the utility box not been at the bottom of the hill, Mr. Blasingame's fall could have resulted in serious injury. The fact that Mr. Blasingame's head slammed into that utility box only worsened an already dangerous fall." *Id*. at 34.

26

The district court acknowledged that *Bradley* post-dated the conduct at issue, but still relied on it because "the *Bradley* court cited numerous cases pre-dating the events at issue here that clearly established that using significant and potentially deadly force against a non-threatening suspect who is on an elevated surface violates that suspect's Fourth Amendment rights." *Id*. at 33–34 n.13. But the district court did not examine any of these cases in its analysis; it exclusively relied on *Bradley*. And as already noted above, *Bradley* could not have put Officer Grubbs on notice because it post-dates the conduct at issue by about three years. *Wade*, 13 F.4th at 1225 (a right must be clearly established "at the time of the challenged conduct.").

Nor could the single earlier case substantively discussed by the *Bradley* court have put Officer Grubbs on notice. The district court relied on two pages of the *Bradley* opinion to conclude that *Bradley* itself was based on clearly established, preexisting law, *see* Doc. 177 at 34 n.13 (citing *Bradley*, 10 F.4th at 1242–44). The only substantive analysis on those pages is a comparison of the facts of *Bradley* to the facts of *Tennessee v. Garner*, 471 U.S. 1 (1985). *Bradley*, 10 F.4th at 1242–44. In *Garner*, the Supreme Court held that a police officer used excessive force

27

when he shot an unarmed, fleeing burglary suspect to stop his flight. *Garner*, 471 U.S. at 21. The *Bradley* court looked to "*Garner*'s analogous facts" and explained that it "clearly established that an officer cannot use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot." *Bradley*, 10 F.4th at 1243. It then held that *Garner* should have put a reasonable officer on notice that tasing a fleeing, non-violent suspect from the top of an eight-foot wall violated the Fourth Amendment, *id.*, and that "no reasonable officer could have believed the application of deadly force was warranted under these circumstances." *Id.* at 1244.

The facts of *Garner* are too different from the facts in this case to have put Officer Grubbs on notice. *Garner* involved the use of deadly force, but it was not apparent to a reasonable officer at the scene that the use of a single taser shock on Mr. Blasingame was an application of potentially deadly force. "[A] taser generally is not a deadly weapon," *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1231 (11th Cir. 2020) (citing *Fils*, 647 F.3d at 1276 n.2)), and a reasonable officer using it once on a fleeing suspect on a grassy hill with some underbrush and no visible dangers or obstacles would not have known he was applying force that

had a "substantial risk of causing death or serious bodily harm." *Pruitt v. City of Montgomery, Ala.*, 771 F.2d 1475, 1479 n.10 (11th Cir. 1985); *see also United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Whether an object constitutes a dangerous weapon turns not on the object's latent capability alone, but also on the matter in which the object was used.") (cleaned up).

The district court also erroneously relied on *Bradley* for another reason: it focused on *Bradley*'s holding that tasing a suspect at an "elevated height" was an application of deadly force, *Bradley*, 10 F.4th at 1241, but that holding does not apply here because Mr. Blasingame was not at an "elevated height" in the way that the suspect was in *Bradley*. The district court explained that *Bradley* held that an officer violates a suspect's clearly-established Fourth Amendment rights "by tasing the suspect when he was on an elevated and precarious surface," Doc. 177 at 34, and that Mr. Blasingame was "on an elevated, precarious surface" when Officer Grubbs tased him, and therefore Officer Grubbs used excessive force. *Id*. at 34. But having both feet on the ground of a grassy hill, with no open hazards is inherently different from the "elevated height" in *Bradley*. In *Bradley*, the "elevated height" was an "eight-foot-

high concrete wall." 10 F.4th at 1236. And in the other cases *Bradley* cites or references, the "elevated height[s]" included a second story window, *Peroza-Benitez v. Smith*, 994 F.3d 157, 162 (3d Cir. 2021); a "small, unenclosed ledge ten feet off the ground," *Negron v. City of New York*, 976 F. Supp. 2d 360, 368 (E.D.N.Y. 2013); a "narrow second-story ledge/roof," *Rockwell v. Rawlins*, No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014); an eight-foot fence, *Peabody v. Perry Twp.*, No. 10-cv-1078, 2013 WL 1327026, at *5–7 (S.D. Oh. Mar. 29, 2013); and a platform 15 feet in the air, *Cook v. Riley*, No. 11-cv-24, 2012 WL 2239743, at *12 (M.D.N.C. June 15, 2012). *Bradley*, 10 F.4th at 1241 (citing *Peroza-Benitez*, 994 F.3d at 168); *see also Peroza-Benitez*, 994 F.3d at 168 (collecting cases).

These "elevated surfaces" are inherently different from the hill in this case, where Mr. Blasingame was not "elevated" on a raised surface but was standing on ground level. Further, the elevated surfaces in *Bradley* and the other cases were openly hazardous or dangerous to the officer at the scene. An eight-foot fence or wall, or any kind of ledge is apparently treacherous and any application of force that caused a fall would be deadly force to a reasonable officer. In contrast, a grassy hill

without any visible hazards, such as large rocks or a utility box or telephone pole, does not present the same apparent environmental hazard that could turn any application of force into deadly force.

Based on the caselaw available in July 2018, a reasonable officer in Officer Grubbs' situation was not on notice that reacting in the same way Officer Grubbs did was a violation of the Fourth Amendment.

## II.  If Officer Grubbs is not entitled to qualified immunity, this Court should vacate the district court's denial of Officer Grubbs' Rule 60(b) motion.

If Officer Grubbs is not entitled to qualified immunity, the Court should vacate the district court's denial of Officer Grubbs' Rule 60(b) motion and remand for consideration of the motion's merits.

The district court denied Officer Grubbs' Rule 60(b) motion for two reasons, both incorrect. It first concluded that it lacked jurisdiction to consider the motion because Officer Grubbs had already appealed the order granting judgment against him as a matter of law, which implicated the punitive damages award. Doc. 219 at 15–16. Alternatively, the district court also denied Officer Grubbs' motion because it believed it should have been construed as a Rule 59(e) motion

to alter or amend the judgment and should have been filed within 28 days of the judgment. *Id.* at 16–18.

Both reasons for denial were erroneous. First, the pending notice of appeal did not deprive the district court of jurisdiction. By the time Officer Grubbs filed his Rule 60(b) motion, Doc. 207, Plaintiff had already filed two of his own Rule 60(b) motions (Docs. 187 and 191), and this Court rescinded the briefing schedule on appeal until the district court resolved these pending motions. Memo. to Counsel or Parties, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Dec. 1, 2022).

Further, it is well-established that "the pendency of an appeal does not affect the district court's power to grant Rule 60 relief," nor does "the pendency of the motion before the district court . . . affect the continuity of a prior-taken appeal." *Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) (citations omitted). This Court agrees. In *Mahone v. Ray*, it explained that "district courts retain jurisdiction after the filing of a notice of appeal" to consider a Rule 60(b) motion and "assess its merits." 326 F.3d 1176, 1180 (11th Cir. 2003). The district court may then "deny the motion or indicate its belief that the arguments raised are meritorious." *Id.* If the district court believes the arguments are meritorious, the movant "may

then petition the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion." *Id*.

The district court should have reached the merits of Officer Grubbs' Rule 60(b) motion. If it had denied the motion, Officer Grubbs could have raised the issues within at the same time as the rest of his appeal. Or, if the district court had found merit to Officer Grubbs' arguments, it could have given Officer Grubbs permission to seek a remand so the district court could grant his motion. *See Mahone*, 326 F.3d at 1180. Instead, the district court added an unnecessary, extra procedural step in the resolution of this case with its erroneous holding.

Second, it was incorrect for the district court to construe Officer Grubbs' motion as a Rule 59(e) motion. To characterize post-judgment motions, this Court looks at the relief sought in the motion and when it was filed. When characterizing the relief sought, This Court applies a "substantive/collateral distinction." *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988). "Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of the dispute, and not matters collateral to the merits." *Lucas v. Fla. Power & Light Co.*, 729 F.2d 1300, 1302 (11th Cir. 1984). In *Finch v. City of Vernon*, the Court

applied the collateral/substantive distinction to a Rule 60 motion filed by the City and held that the motion was actually a Rule 59(e) motion because it "raised the propriety" of the district court's holding on joint and several liability, which was "clearly a substantive issue going to the heart of the judgment[.]" 845 F.2d at 259. As for timing, if a motion that could be a Rule 59(e) motion or a Rule 60(b) motion is filed after Rule 59's 10-day limit, the Court construes it as a Rule 60(b) motion. *See Mahone*, 326 F.3d at 1177 n. 1 (citing *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001)).

Officer Grubbs' motion was a Rule 60(b) motion, both in substance and in timing. As for substance, Officer Grubbs did not seek reconsideration of any "substantive issue going to the heart of the judgment." *Finch*, 845 F.2d at 259. He did not raise new arguments related to the merits of the Section 1983 claim against him or his qualified immunity defense. Rather, he sought the district court's resolution of the constitutionality of the amount of his punitive damages, an issue "collateral to the merits" of the case. *Id.* at 258; *see also* Doc. 207-1. Additionally, Officer Grubbs filed his motion on December 23, 2022, *see* Doc. 207, more than 10 days after the district court's judgment, which

it entered on September 22, 2022. Doc. 179. In sum, it was erroneous for the district court to construe Officer Grubbs' motion as a time-barred Rule 59(e) motion instead of ruling on the motion's merits.

## CONCLUSION

For the above reasons, this Court should hold that Officer Grubbs was entitled to qualified immunity and reverse the district court's denial of judgment as a matter of law. Alternatively, this Court should vacate the district court's denial of Officer Grubbs' Rule 60(b) motion and remand for consideration on the merits.

Respectfully submitted this 26th day of July, 2023.

<div style="display:flex">
<div>

*s/ James E. Dearing, Jr.*

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

</div>
<div>

s/ *Harold D. Melton*

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
TROUTMAN PEPPER
HAMILTON SANDERS, LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Appellant Officer J. Grubbs*

</div>
</div>

35

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,304 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font

July 26, 2023                          s/ *Harold D. Melton*
                                       Harold D. Melton

                                       *Counsel for Appellant Officer J.*
                                       *Grubbs*

36

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on July 26, 2023. I served all counsel of record by CM/ECF.

July 26, 2023

*s/ Harold D. Melton*
Harold D. Melton

*Counsel for Appellant Officer J. Grubbs*

37